UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT BENYAMINI,

Plaintiff,

v.

M. SWETT, et al.,

Defendants.

No. 2:13-cv-735-KJM-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding without counsel in an action brought under 42 U.S.C. § 1983 which alleges excessive force in a cell extraction. Defendants have filed a motion for summary judgment. ECF No. 98. Plaintiff has filed an opposition (ECF No. 108) and defendants have filed a reply (ECF No. 112). For the reasons that follow, the motion should be granted.

Background

I.    Plaintiff's Allegations

Plaintiff alleges that, on May 6, 2009, defendants approached his cell and informed him that it was time for the administration of his mandatory medication. ECF No. 1 at 11-12. He claims that he had previously had an allergic reaction to the medication defendants sought to administer, however. *Id.* Consequently, plaintiff refused to take the medication and defendants were forced to extract him from his cell in order to administer it. *Id.* Plaintiff alleges that, after his hands had been cuffed behind his back and his feet shackled, defendants beat, stomped, and slammed him against the concrete floor. *Id.* at 12. Specifically, he alleges that: (1) defendant

Swett stomped on his foot (*id.* at 12); (2) defendant Miranda stepped on his neck (*id.*); (3) defendant carpenter was "banging" his head (*id.*); and (4) that defendant Perry beat him while his hands were cuffed (*id.*).

II.     Defendants' Narrative

On May 6, 2009, plaintiff was under a *Keyhea*[1] order requiring him to take antipsychotic medication. ECF No. 98-1 at 7. On that day, defendant Carpenter approached plaintiff's cell and directed him to submit to handcuffs. *Id.* Plaintiff refused that order. *Id.* Other officers approached the cell and gave similar orders, but plaintiff persisted in his refusal to submit to handcuffs. *Id.*

Roughly an hour after Carpenter first directed plaintiff to submit to handcuffs, an extraction team gathered outside plaintiff's cell. *Id.* at 8. After defendants re-issued their orders, plaintiff finally complied and permitted application of handcuffs. *Id.* The cell door was then opened and plaintiff was ordered to kneel so that leg restraints could be applied. *Id.* at 9. Plaintiff resisted this order and defendants Miranda and Swett used their body weight to force him to a prone position. *Id.* Defendants Carpenter and Perry assisted by placing holds on plaintiff's legs. *Id.*

A member of the unit medical staff – LVN Bergado – administered plaintiff's medication. *Id.* Plaintiff remained combative and verbally threatened staff. *Id.* at 9-10. After the administration of the medication, plaintiff was returned to his cell. *Id.* at 10. Bergado observed no external physical injuries to plaintiff as a result of the extraction. *Id.*

After the incident, plaintiff was charged with resisting a peace officer in violation of California Code of Regulations § 3005(d). *Id.* He was convicted and assessed a ninety-day loss of credit. *Id.*

/////

/////

---

[1] *Keyhea v. Rushen*, 178 Cal.App.3d 526, 542, 223 Cal. Rptr. 746 (Cal. Ct. App. 1986), sets forth the substantive and procedural safeguards which must be adhered to when the state seeks to involuntarily medicate state prisoners with long-term psychotropic medications. These orders are commonly referred to as *Keyhea* orders.

<u>Legal Standards</u>

I.       <u>Summary Judgment</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National*

*Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

II.     Excessive Force

To establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must demonstrate that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, the court may evaluate (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 7; *see also id.* at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks and citations omitted). "Unless it appears that the evidence, viewed in the light most favorable to the

plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

Analysis

Defendants raise three arguments in support of their motion for summary judgment. First, they argue that plaintiff's excessive force claims are barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck* the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87. They contend that, because plaintiff was found guilty of resisting a peace officer and assessed a ninety-day credit loss, his claims are barred by *Heck*. Second, they argue that no genuine dispute of material fact exists as to plaintiff's excessive force claims. They note that a video of the use of force incident exists and blatantly contradicts plaintiff's allegations. ECF No. 98-1 at 15. Finally, defendants argue that they are entitled to qualified immunity. Having reviewed the video evidence, the court finds, for the reasons stated hereafter, that defendants' second argument should be credited. Consequently, it finds it unnecessary to reach the first and third arguments.

Attached to defendants' motion for summary judgment is the declaration of correctional officer C. Drake. ECF No. 98-8. Officer Drake acted as the camera operator for the cell extraction team which undertook to administer plaintiff's court ordered medication. *Id.* at 1, ¶ 2. His recording of the incident was attached to his declaration by way of a DVD disc labelled "Exhibit A." The court has reviewed the recording. The video which runs to - nine minutes and forty seconds – begins with the members of the extraction team identifying themselves. ECF No. 98-8, Ex. A at 0:04 – 1:04. Defendant Roth begins the introductions by noting that: (1) it is 8:13 a.m. on May 6, 2009; (2) that plaintiff is refusing his court ordered medication; and (3) that all 'custody,' 'mental health,' and 'medical' efforts to obtain plaintiff's compliance in taking his

medication have proven unsuccessful, thereby necessitating cell extraction to administer it. *Id.* at 0:01 – 0:026. The extraction team proceeds to the door of plaintiff's cell. *Id.* at 1:04 – 1:31. There, defendant Roth orders plaintiff to approach the door, submit to restraints, and take his medication. *Id.* at 1:32 – 1:43. Plaintiff argues that he is allergic to his medication and does not immediately comply with Roth's orders to submit to restraints. *Id.* at 1:52 – 2:00. The door to plaintiff's cell remains closed at this point.

After approximately one minute passes, plaintiff complies with orders to don a 'spit net' and put his hands through the cell slot for the placement of handcuffs. *Id.* at 2:00 – 3:00. The cell door is then opened and plaintiff is directed to drop to his knees so that leg restraints can be applied. *Id.* at 3:00 – 3:17. Plaintiff offers limited resistance to this instruction and four officers restrain him in order to apply the leg restraints. *Id.* at 3:17 – 3:29. None of the officers strike or slam plaintiff during the application of these restraints and, after the leg restraints are applied, plaintiff is helped to his feet. *Id.* at 3:30 – 3:34. Once plaintiff is fully secured a medical evaluation is ordered. *Id.* at 4:04. Plaintiff can be heard arguing that he has bruising on his body, though it is not discernable from the video whether he actually has any bruises or whether plaintiff is claiming that he obtained the bruising during the immediate extraction. *Id.* at 4:19 - 4:22. The medical evaluation is quickly completed (*id.* at 4:24) and plaintiff is directed to get on his knees. *Id.* at 4:35 – 4:38. The final restraint – a belly chain - is added at this time. *Id.* at 4:40 – 5:50.

From 6:05 to 8:11 of the video, officer Drake turns the camera away from the administration of plaintiff's medication and downward, toward the face of his wrist watch.[2] *Id.* at 6:05 – 8:11. Plaintiff can be heard continuing to argue that he is allergic to the medication and that no physician has adequately discussed it with him. Id. at 7:10 – 7:16. Then, plaintiff can be heard telling officers not to grab his wrist and advising them he has a 'bad wrist.' *Id.* at 7:25 – 7:31. An order is subsequently given not to grab plaintiff's hands. *Id.* at 7:32. The medication having been administered, officers begin removing plaintiff's restraints in order to return him to

---

[2] In his declaration, officer Drake states that he panned away from the incident toward his watch in order to note the time. ECF No. 98-8 at 2, ¶ 16.

his cell. *Id.* at 8:12 – 9:05. No officer strikes or slams plaintiff during this time. Plaintiff is placed back in his cell and the door is closed. *Id.* at 9:07 – 9:12. Lastly, plaintiff's handcuffs are removed by way of the door slot and extraction is deemed complete. *Id.* at 9:20 – 9:40.

The Supreme Court has held that, where a video conclusively refutes a claimant's allegations, a court may credit the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007), (holding that police dash-cam video so "utterly discredited" the plaintiff's account of a car chase that "no reasonable jury could believe" him). That holding in *Scott* is directly applicable here. As noted *supra*, plaintiff alleges that defendants maliciously stomped, struck, and beat him during the May 6, 2009 cell extraction. ECF No. 1 at 11-12. The video indicates that nothing of the sort occurred. The video clearly demonstrates that the defendants applied only the force necessary to place plaintiff in restraints. The video also plainly indicates that plaintiff did not suffer any of the sorts of injuries which would be commensurate with the level of force he alleges in his complaint. At the end of the video, as plaintiff is returned to his cell, there are no obvious marks or bleeding on his body and he appears capable of moving without assistance. The lack of injuries is corroborated by Licensed Vocational Nurse Bergado who noted, in both a declaration accompanying defendants' motion and a form authored immediately after the extraction, that plaintiff suffered no external injuries. ECF No. 98-6 at 3-4, ¶11; ECF No. 98-6 at 6, Ex A. Finally, although certain portions of the video are rendered less useful by Officer Drake's focus on his wrist watch, the audio captured during those portions cuts against plaintiff's allegations. Other than complaints about his "bad wrist," plaintiff never cries out or states that he is being beaten, stomped, or slammed.

Based on the foregoing, the court finds that each of the *Hudson* factors cuts in favor of the defendants. First, plaintiff suffered no clear injury as a result of the extraction.[3] Second, force was clearly required to administer plaintiff's court ordered medication, as evidenced by the fact that he continued to protest and declare himself allergic to it even as the officers gathered outside

---

[3] Defendants note that, in his deposition, plaintiff was inconsistent about what injuries he actually suffered during the cell extraction. He was unclear, for instance, whether he had suffered a back injury during the extraction. ECF No. 98-4 at 12, Ex. A.

his cell.  Third, the video plainly indicates that the officers used only the force necessary to place restraints on plaintiff.  Fourth, defendants could reasonably have perceived plaintiff's refusal to take his medication and refusal to immediately comply with their orders as a threat requiring the use of force.  *See, e.g., Johnson v. Turmezei*, 2008 U.S. Dist. LEXIS 9175, * 18 (E.D. Cal. Feb. 6, 2008) ("Insubordination is a matter taken very seriously within the confines of an institutional setting.  Plaintiff's refusal to comply with the direct orders of defendants created a need for the application of force to gain plaintiff's compliance, and the force at issue was employed for the very purpose of gaining plaintiff's compliance with the order. When an inmate refuses to comply with the order of a staff member, a threat may be reasonably perceived by staff.").  Finally, the video evidence shows that defendants tempered their use of force by using only physical holds and verbal orders to gain plaintiff's compliance.

Conclusion

Based on the foregoing, the court finds that no reasonable jury could return a verdict for plaintiff.  Accordingly, it is hereby RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 98) be GRANTED;

2.  Plaintiff's excessive force claims be dismissed with prejudice; and

3.  The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 12, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE